HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| UNITED STATES OF AMERICA, | CASE NO. CR18-5214RBL |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| MISTER SLAUGHTER, | |
| Defendant. | |

THIS MATTER is before the Court on Defendant's Emergency Motion for Compassionate Release [Dkt. #68]. The Court has reviewed the matters filed for and against the motion. Oral argument is not necessary. For the following reasons, the motion is **DENIED**.

**I. FACTS**

**A. Slaughter's Conviction, Sentence and Criminal History.**

On January 3, 2020, this Court sentenced Mister Slaughter to 20 months in custody following his guilty plea to the charge of Assault on a Federal Officer, 18 U.S.C. § 111(a) for ramming his vehicle into a Veterans Administration Police Officer's patrol car, with the officer inside it. At sentencing, this Court determined that Slaughter had a criminal history category of IV based on his five juvenile felony convictions, including

convictions for Residential Burglary, Robbery in the Second Degree (twice), Robbery in the First Degree, and Vehicle Theft.

The Bureau of Prisons has calculated Slaughter's release date to be March 21, 2021. Slaughter is currently housed at FCI Sheridan.

**B. Slaughter's Medical Conditions.**

Slaughter is now 23 years old. He claims to suffer from heart murmurs, a condition that he first reported to BOP medical staff on March 29, 2020. *See* Exhibit A at 1-2, filed under seal. At that time Slaughter advised the medical staff that he generally observes such murmurs when the cell is quiet at night and he is thinking about his release. The paramedic who treated him concluded that the murmur is caused by anxiety. Although he had previous examination by BOP medical personnel on various occasions, this was the first time that he reported this medical condition. The medical records also establish that Defendant has never taken medication for his condition. He does not have any other heart condition, or other medical condition according to his motion or his BOP medical records.

## II. ANALYSIS

**A. The Legal Standards for Compassionate Release**

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 825 (2010). Consistent with that principle, Section 3582(c) provides that a court "may not modify a term of imprisonment once it has been imposed," except under three specified circumstances, one of which is a

motion under 18 U.S.C. § 3582(c)(1)(A). This statute provides a court with jurisdiction to reduce an otherwise final sentence where a defendant establishes: (1) the exhaustion requirements in the statute have been satisfied; (2) an extraordinary and compelling reason supports the motion; and (3) any reduction is consistent with the policy statement.

Congress directed the Sentencing Commission to draft the referenced policy statement in 28 U.S.C. § 994(f) which provides:

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

That policy statement, found at USSG § 1B1.13, provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1) (A) Extraordinary and compelling reasons warrant the reduction;
>
>    (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

As directed by 28 U.S.C. § 924(t), the application notes then define what constitute "extraordinary and compelling reasons" to support a reduction in sentence. Specifically,

ORDER - 3

application note 1 provides that extraordinary and compelling reasons exist under the following circumstances:

> (A) Medical Condition of the Defendant.—
>
>> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>
>> (ii) The defendant is—
>>
>>> (I) suffering from a serious physical or medical condition,
>>>
>>> (II) suffering from a serious functional or cognitive impairment, or
>>>
>>> (III) experiencing deteriorating physical or mental health because of the aging process,
>>
>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less

USSG § 1B1.13 cmt. n.1. The application note also provides that extraordinary and compelling reasons may include certain described family circumstances, or other reasons as determined by the Director of the Bureau of Prisons. The notes then provide that "[t]he court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's

medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community." USSG § 1B1.13 cmt. n.4.

### 1. *The Policy Statement's Description of "Extraordinary and CompellingReasons" for a Sentencing Reduction is Binding.*

Based on the text of § 3582(c)(1)(A), the policy statement referenced in § 3582(c)(1), like that referenced in 18 U.S.C. § 3582(c)(2), *see* USSG § 1B1.10, controls how this Court is to exercise of discretion. *Cf. Dillon v. United States*, 560 U.S. 817, 827 (2010). In *Dillon*, the Supreme Court addressed the identical language in 18 U.S.C. § 3582(c)(2) requiring that a reduction in sentence be "consistent with applicable policy statements issued by the Sentencing Commission." The Court held that based on this language, the limitations in the pertinent policy statement bound a district court's discretion in reducing a sentence. *See Dillon*, 560 U.S. at 826. Given the parallel nature of the two statutory subsections, the same analysis must apply 3582(c)(1)(A).

The fact that USSG § 1B1.13 has not been amended after enactment of the First Step Act does not alter that conclusion. The Act did not change any of the statutory standards for relief, or suggest that there should be a broader interpretation of what constitutes an "extraordinary and compelling reason" beyond what is reflected in the policy statement. Nor did Congress direct the Sentencing Commission to change or expand this policy statement or the type of reasons that would qualify. Rather, Congress simply made it possible for a defendant to file a motion rather than retaining the Bureau of Prisons as the gatekeeper. *See, United States v. Ebbers,* 2020 WL 91399, *4 (S.D.N.Y. Jan. 8, 2020).

Therefore, as numerous courts have found, this policy statement must guide this Court's determination of whether a defendant has presented constitute "extraordinary and compelling reasons." (citations omitted).

Therefore, before this Court may reduce the defendant's sentence, applying the guidance in USSG § 1B1.13, this court first must determine whether the reasons the defendant has provided are extraordinary and compelling. And, if the court concludes such a reason or reasons have been provided, this Court must then consider whether a reduction in sentence is appropriate in light of the factors in 18 U.S.C. § 3553(a) and the danger that the defendant might continue to present to another person or the community.

**B. Slaughter Has Not Met the Standard for a Reduction on Sentence.**

First, on May 12, 2020, Slaughter emailed his warden to request release to home confinement due to the COVID-19 pandemic. Because more than 30 days have elapsed since his request, Slaughter has met the exhaustion required and this Court has jurisdiction over the matter.

But even though Slaughter has satisfied the exhaustion requirement, to be eligible for a district court's discretionary consideration of a reduced sentence under this provision, a defendant bears the burden to show "extraordinary and compelling reasons" that meet the high bar set by Congress and the Sentencing Commission for compassionate release to be granted. *See Riley v. United States*, No. C19-1522 JLR, 2020 WL 1819838 at *7 (W.D. Wash. Apr. 10, 2020).; *United States v. Greenhut*, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020) (holding that defendant bears the burden of establishing entitlement to sentencing reduction and citing *United States v. Sprague*, 135 F.3d 1301, 1306-07 (9th

Cir. 1998)). As other courts have noted, ("[A] compassionate release . . . is an extraordinary and rare event." *United States v. Mangarella*, 2020 WL 1291835, at *2–3 (W.D.N.C. Mar. 16, 2020) (citation omitted)). "To be faithful to the statutory language requiring 'extraordinary and compelling reasons,' it is not enough that Defendant suffers from . . . chronic conditions that [he] is not expected to recover from. In general, chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Ayon-Nunez*, 2020 WL 704785, at *2–3 (E.D. Cal. Feb. 12, 2020) (rejecting a claim for compassionate release from a defendant suffering from severe back injuries and epilepsy);

Moreover, this reluctance to view compassionate release too expansively is grounded in a concern that it could yield significant sentencing disparities. *Ebbers*, 2020 WL at *6 (S.D.N.Y. Jan. 8, 2020). Compassionate release is not a tool to "correct" a judgment. *Id.* Simply put, as discussed below, Slaughter cannot make that showing.

> 1. ***COVID-19 Alone Does Not Create an Extraordinary and Compelling Reason, and Defendant's Documented Medical Condition Does Not Rise to the Level of an Extraordinary and Compelling Reason.***

Defendant's case is not one of those rare cases where a reduction in sentence is appropriate. Instead, the defendant essentially relies on the possibility that he may become infected with COVID-19 while at the institution to justify release. But, "[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. §1B1.13." *Eberhart*, 2020 WL 1450745 at *2. As other courts have noted, the latter claim would apply to

everyone in confinement and does not constitute extraordinary and compelling reasons. *See, e.g., United States v. Fuentes*, 2020 WL 1937398 (E.D. Ca. Apr. 22, 2020); *United States v. Stanard,* 2020 WL 2219478 (W.D. Wa. May 7, 2020); *United States v. Espinal*, 2020 WL 2092484 (E.D. N.Y. May 1, 2020); *United States v. Allegra*, No. 15 CR 243, DN 232 at 7 (N.D. Ill. Apr. 13, 2020).

The defendant suggests that the heart murmur that he reported for the first time in March 29, 2020 places him at higher risk to become severely ill from COVID-19, and that his risk of contracting COVID-19 while in custody is significantly higher than if he were to be released. Even assuming he has such a condition, this would not constitute the type of serious heart conditions that the Centers for Disease Control and Prevention (CDC) have identified as creating a heightened risk of serious complications if COVID-19 is contracted. According to the CDC, examples of serious heart conditions that may be a risk factor for COVID-19 are heart failure, coronary heart disease, congenital heart disease, cardiomyopathies, and pulmonary hypertension, none of which is documented in Slaughter's BOP medical records or otherwise documented with his motion.

Nor has Defendant provided any evidence that he will be less likely to contract COVID 19 if released. Defendant has no residential release plan, which means that he will release to a residential reentry center in lieu of homelessness. Defendant has not explained how the dormitory-like arrangement of an RRC is safer than his current prison housing. Nor has he explained what measures he plans to take to ensure his own self-care and compliance with COVID-19 restrictions.

### 2. *COVID-19 and the Bureau of Prisons.*

Slaughter also seeks to portray the Bureau of Prisons response as inadequate, but he has not made any showing that the facility at which he is housed is unequipped to provide appropriate medical treatment if he were to become sick. First, and most critically, there is not a single case of COVID-19 at Sheridan FCI, where Defendant resides. Such a fact is itself a testament to BOP's handling of this crisis. Further, BOP is making every effort to combat the spread of this infectious disease. The speculative possibility of COVID-19, standing alone, simply does not present the type of extraordinary and compelling reason to release early from his sentence.

Moreover, BOP is also making every effort to combat the spread of this infectious disease. To start, the BOP is acting to remove particularly vulnerable individuals from a variety of institutions to home confinement using its authorities under 18 U.S.C. § 3624(c)(2) and 34 U.S.C. § 60541(g), as well as the expanded authority under Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136. As of June 3, 2020, some 4,234 inmates have been transferred to home detention.

Therefore, acknowledging that COVID-19 presents a health risk to everyone, including incarcerated individuals, there is no basis for concluding that the defendant faces a significantly greater risk while in custody than what he would face in the community upon his release.

### 3. *The § 3553(a) Factors Don't Support the Defendant's Release and the Defendant Has Failed to Establish He is No Longer a Danger.*

As noted above, Defendant has not presented "extraordinary and compelling" reasons to reduce his sentence. This fact alone calls for denial of his motion. That conclusion is further supported by the application of the factors set out in § 3553(a). Those factors have not altered since Defendant's original sentencing.

Further, this Court may not reduce Defendant's sentence unless it finds that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG § 1B1.13; *see also United States v. Gotti*, No. 02-cr-743-CM, 2020 WL 497987 (SDNY 2020) (finding that even if medically eligible, release was inappropriate because defendant poses a continuing danger to the public). This record precludes such a finding.

Nothing about the COVID-19 pandemic reduces the defendant's danger to others. First, the crime for which Defendant was sentenced here was a crime of violence— assault of a federal officer that also involved a firearm. That crime follows a pattern of other criminal behavior that motivate the victim in this case to oppose compassionate release.

But danger to the community is not limited to physical violence. It can take different forms. *See, e.g., United States v. Reynolds*, 956 F.2d 192, 192 (9th Cir. 1992) ("[D]anger may, at least in some cases, encompass pecuniary or economic harm."). Defendant's release right now presents a danger to the community because first responders are focused on mitigating the effects of the COVID-19 outbreak, so they are less equipped to

prevent and respond to wrongdoing. His reliance on being closely supervised by Probation Officers upon his release is similarly misplaced right now, as even their most basic tools – urinalysis tests and home visits – are not being are severely restricted.

In the current climate, irresponsible social habits can also endanger the health of the community. In order to be effective, people must follow the rules and voluntarily comply. Such rules, though enforceable by peace officers, rely largely on voluntary obedience. A person who ignores such admonitions and rules could increase infection rates, leading to severe illness and death.  The defendant poses a high risk of reoffending upon release from prison.

### III. CONCLUSION

For all of the above reasons, defendant's Motion for Compassionate Release [Dkt. #68] is **DENIED**.

Dated this 26th day of June, 2020.

*(signature)*

Ronald B. Leighton
United States District Judge